[Civ. No. 21264.   Second Dist., Div. One.   Apr. 13, 1956.]

LESSEL VENABLES, Plaintiff and Appellant, v. CREDENTIAL INSURANCE AGENCY, INC. (a Corporation) et al., Defendants and Appellants.

Trent G. Anderson, Jr., for Plaintiff and Appellant.

Paul Pearlin and Abraham Gorenfeld for Defendants and Appellants.

DORAN, J.—Plaintiff, as a director and minority stockholder in the defendant corporation, filed the complaint herein against the corporation and the other directors, seeking a dissolution.   The complaint alleged the existence of two factions which were deadlocked so that corporate business

could not be advantageously conducted, together with various wrongful acts on the part of the defendant majority stockholders. Plaintiff was a former employe of the corporation who had withdrawn from such employment about a year previous to the filing of the complaint.

The answer sets forth that the defendants, owning more than 50 per cent of the corporate stock, desire to purchase plaintiff's stock, and to that end request the court "to appoint three disinterested commissioners to appraise the fair value of plaintiff's shares, and for an order directing the sale by plaintiff to defendants pursuant to the provisions of sections 4658 and 4659 of the Corporations Code." Thereafter each side submitted three names of proposed commissioners, from which list the trial court selected two names from plaintiff's list and one name from the defendant's list. Commissioners Bulkley and Tichner are managers of insurance company offices and Commissioner George Gish is a certified public accountant. Further proceedings for dissolution were suspended upon defendants' posting a $20,000 bond.

The order appointing commissioners declared that "The fair cash value of said shares . . . shall be the amount which a ready, able, willing and informed buyer would pay, and the amount which a willing and informed seller would accept for said shares in said corporation as a going concern, and not in liquidation thereof." Pursuant thereto, the commissioners held hearings at which oral and documentary evidence was received and considered.

A written statement was thereafter made by the commissioners but was not filed within the specified time; plaintiff objected to further consideration but the trial court allowed the commissioners to file an amended appraisal report. The commissioners' report recommends "as a fair cash value of 188 shares held by the Plaintiff, the amount of $4,240.85, or $22.56 per share." The report further states that the parties had agreed that the value of the Credential Insurance Agency's net assets, aside from goodwill, was $10,389.73.

As to goodwill, the report concedes that "the figure used by most insurance agencies is one year's gross commission, based upon a three years average, . . . dependent upon members of the agency not competing for business with the agency. The absence of any agreement not to compete, has led us to believe that the Plaintiff has been placed in an enviable position towards obtaining some of the business. . . . Informa-

tion submitted by Mr. Venables indicates that he is currently operating an Insurance Agency and has already succeeded in selling insurance to some of the accounts previously serviced by the Credential Insurance Agency.''

The commissioners concluded that since no dividends were paid, and there was no agreement not to compete and that Mr. Venables was in competition with the corporation, ''any goodwill left in the corporation is for all practical purposes non-existent. However, because of his prior connection with the corporation this commission feels that Plaintiff is entitled to a small amount of goodwill . . . in the sum of $513.01.''

Thereafter, plaintiff moved to strike the report and have the court fix a value, ''on the premise that the appraisers were confused . . . and that they did not make a fair appraisal.'' Defendants moved to confirm the award. The trial court set aside the award of the commissioners and rendered a memorandum decision fixing the value of plaintiff's shares at $62.50 per share, a total of $11,750.

In this memorandum the court notes that ''Since Venables left the employ of the corporation on October 1, 1953, important changes have been made in bookkeeping methods. It is difficult to reconstruct the records so as to show the status of the corporation on its former basis of keeping financial records. . . . It is noted that in November, 1951, Greenfield and Rappaport (defendants herein) purchased 160 shares from the corporation for $10,000. This would be $62.50 per share, not considering other possible consideration for the shares. The results of the operations of the corporation seem to be at least as good now as they were then. Previously, in October, 1950, Venables purchased another shareholder's shares for $100 per share. If one followed formulas for evaluating insurance agency businesses even a higher valuation might be reached.'' From the judgment pursuant thereto, the defendants have appealed, and the plaintiff has filed a cross-appeal.

The defendant-appellants contend that ''the trial court erred in ordering judgment for plaintiff in excess of the award of the appraisers''; that ''the trial court erroneously used a simple market value approach,'' in place of considering ''all material factors and elements,'' and assert that ''the determination made by the appraisers was correct and should have been confirmed.''

Plaintiff-respondent, on the other hand, argues that ''the court gave a broader and more objective consideration to the

evidence than did the Commissioners," and that since the decision of the court is based upon matters appearing substantially in the record, the same should be sustained. On plaintiff's cross-appeal, it is urged that plaintiff is entitled to a portion of the renewal values of insurance, which are a "tangible asset" in the hands of the corporation; that the court "did not give consideration to the investment of the parties," nor to "the allegations of wrong doing in the complaint," for which reasons the award to plaintiff should be increased.

Consideration of the entire record leads to the conclusion that the trial court committed no reversible error in setting aside the award of the commissioners and entering the judgment appealed from. Under the express provisions of section 4659, "The award of the Commissioners or a majority of them *when confirmed by the Court* shall be final and conclusive upon all parties," and in section 4658, *"The Court"* is empowered *"to ascertain and fix the value* of the shares owned by the plaintiffs." (Respondent's italics.) When convinced that the award was erroneous, it was clearly the duty of the trial court to examine the matter de novo and to fix a proper value, as was done in the instant case.

The questions presented to the trial court were largely factual, and the decisions cited by the parties to this appeal deal either with fundamental legal concepts or with situations not comparable with that here involved. In the instant case, the findings and judgment are amply supported by the record.

Examination of the trial court's findings of fact clearly indicates that full consideration was given to the organization and history of the defendant corporation, the various activities of those associated with the business, and the fact "That the corporation has not paid dividends at any time, and due to the fact that the operating profits of the company are almost wholly paid out in the form of salaries and expense accounts to the officers and principal stockholders . . ., a very small surplus has been accumulated and the payment of dividends is unlikely." The matter of renewal values is likewise treated, and the court found that "on or about the month of June, 1954, the defendants had, without the consent of the plaintiff, revised the bookkeeping practices and procedures. That in doing so they had eliminated the matter of renewal value or goodwill," and "That it was therefore

impossible to make any valuation of the shares of stock based on the book value of the corporation.''

The trial court also found that the ''ordinary methods of determining what a ready, able and willing buyer would pay for plaintiff's shares are inapplicable,'' for the reason that ''plaintiff's shares . . . have a fair cash value peculiar to said purchasing defendants and not applicable to any other buyer''; and that ''even after making allowance for the possible competition of plaintiff said shares should have a fair cash value to said defendants of at least . . . $62.50 per share,'' the amount paid by Greenfield and Rappaport in 1951, since ''the business and affairs and earning capacity of said corporation on September 23, 1954, were as good or better than they were in 1951.''

The various contentions of the appellants are untenable, as are the points made on plaintiff's cross-appeal. No reversible error is apparent.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.