32 Cal.Rptr. 764]

[Civ. No. 26334.   Second Dist., Div. Three.   Aug. 5, 1963.]

VID ROSNER et al., Plaintiffs and Appellants, v. BENE-
DICT HEIGHTS, INC., et al., Defendants; EVERT L.
HAGAN et al., Interveners and Respondents.

Joseph W. Fairfield and Ethelyn F. Black for Plaintiffs and Appellants.

No appearance for Defendants.

Evert L. Hagan, in pro. per., and Jesse A. Hamilton for Interveners and Respondents.

FORD, J.—This is an appeal from a judgment which determined the ownership of certain certificates for shares of stock of Benedict Heights, Inc., and adjudged that the corporation was bound to transfer and reissue of record certain of such certificates in accordance with the determination of ownership. The appellants are designated in the notice of appeal as ''Vid Rosner and Miriam Benjamin, President and Secretary of Benedict Heights, Inc., . . . and Vid Rosner and Miriam Benjamin individually.'' The respondents are Evert L. Hagan, Charles M. Farrington, Mary Louise Smith and Vivienne Ahlstrom, each being a person whose ownership of one or more specific certificates was so determined.

It is necessary to state the history of the present controversy. On September 25, 1957, Vid Rosner, Joe E. Davis, Miriam Benjamin and George Fatland filed a complaint in the superior court by which the dissolution of the defendant Benedict Heights, Inc., a California corporation, was sought.

Therein it was alleged that, "in and about the year 1953, the plaintiffs . . . were directors of the defendant corporation, constituting four of the five directors." Other allegations were that "for the last four years there have been no meetings of shareholders and no directors have been elected," and that in that period of time there were no meetings of directors "to elect officers." It was further alleged that "the corporation has abandoned its business for more than one year."

On December 5, 1957, the default of the defendant corporation was entered by the court, it being stated in such entry that the corporation had been served with summons pursuant to section 3302 of the Corporations Code[1] and that that defendant had failed to answer the complaint within the time permitted by law.

On April 15, 1959, Evert L. Hagan and Charles M. Farrington filed a complaint in intervention, after having obtained leave of court to do so. The nature of that pleading and the subsequent proceedings relating to it are set forth in *Hagan* v. *Superior Court*, 53 Cal.2d 498, at pages 500-501 [2 Cal.Rptr. 288, 348 P.2d 896]. In that case it was said, at page 503: "In their complaint in intervention petitioners allege that they are shareholders in Benedict Heights, Inc., and that by refusing to recognize them as such defendants in intervention have prevented them from participating in the affairs of the corporation. They request an order compelling defendants in intervention to register their shares on the corporation's books and to issue new certificates evidencing such shares. This part of the complaint in intervention asserts rights that are indisputably personal to petitioners and appropriately raised in the involuntary dissolution proceedings to ensure recognition of petitioners' claims during the impending distribution of corporate assets. . . . Section 4653 of the Corporations Code gives to 'any shareholder or creditor' an unqualified right to

---

[1]Section 3302 of the Corporations Code is as follows: "If designation of an agent for the purpose of service of process has not been filed with the Secretary of State, or if the agent designated cannot with due diligence be found at the address designated for personal delivery of the process, and it is shown by affidavit to the satisfaction of a court or judge that personal service of process against a domestic corporation cannot be made with the exercise of due diligence upon the designated agent or in any other manner provided by law the court or judge may make an order that the service be made upon the corporation by delivering by hand to the Secretary of State, or to any person employed in his office in the capacity of assistant or deputy, one copy of the process for each defendant to be served, together with a copy of the order authorizing such service. Service in this manner constitutes personal service upon the corporation."

intervene in proceedings for the involuntary winding up or dissolution of a corporation." The decision of the Supreme Court in *Hagan* v. *Superior Court* was expressed as follows (53 Cal.2d, at pp. 504-505) : "Let a peremptory writ of prohibition issue to restrain respondent court from enforcing its order requiring petitioners to post security and to restrain respondent court from entering judgment in the involuntary dissolution proceedings until petitioners have been accorded an opportunity to establish their status as shareholders in Benedict Heights, Inc., and to exercise their rights as intervenors." The opinion was filed on January 26, 1960.

Thereafter, on November 14, 1961, after a hearing in which the parties other than the corporation and Farrington appeared, the superior court ordered that the corporation be wound up and dissolved. The intervener Hagan does not appear to have opposed such order except insofar as his asserted rights as a shareholder might be prejudiced by the entry of the order prior to the determination of such rights. The judgment from which the present appeal was taken was filed on March 12, 1962.

█ The appellants contend that it was error to permit the respondent Hagan to intervene in the proceedings because he was not a "holder of record of shares" or "shareholder of record." (See Corp. Code, § 103.) That contention is untenable in view of the reasoning of the Supreme Court in *Hagan* v. *Superior Court, supra,* 53 Cal.2d 498. As an owner of shares Hagan had an interest in the subject matter of the pending complaint for the dissolution of the corporation. (See Corp. Code, §§ 5000, 5002; Ballantine & Sterling, California Corporation Laws (4th ed. 1962) § 16.03, fn. 86.)

█ The appellants further contend that intervention was not proper after the default of the corporation had been entered because " [e]ntry of a default is equivalent to a trial, and after a trial an order permitting intervention was void and a pleading filed thereafter is a nullity." The argument is unsound. Such default did not automatically determine the future course and ultimate disposition of the proceeding. It was still necessary that there be a hearing to determine whether the court should decree a winding up and dissolution of the corporation. (Corp. Code, § 4657.)[2] Prior to such hearing inter-

---

[2]Section 4657 of the Corporations Code is as follows: "After hearing the court may decree a winding up and dissolution of the corporation if cause therefor is shown, or, with or without winding up and dissolution, may make such orders and decrees and issue such injunctions in the cause as justice and equity require."

vention by respondent Hagan was clearly proper under the reasoning of *Hagan* v. *Superior Court, supra,* 53 Cal.2d 498. It would not be reasonable to hold that the default of the corporation precluded such intervention, particularly where the persons who caused the default to be entered were four of the five directors of the corporation who last assumed such status. Moreover, under section 4660 of the Corporations Code, the involuntary proceedings for winding up the corporation were not deemed to have commenced until the effective date of the order or decree therefor.

The appellants assert that the order or decree of November 14, 1961, that the corporation be wound up and dissolved was void because it was made more than three years after the entry on December 5, 1957, of the default of the corporation. Reliance is placed on the portion of section 581a of the Code of Civil Procedure which is as follows: ''All actions, heretofore or hereafter commenced, must be dismissed by the court in which the same may be pending, on its own motion, or on the motion of any party interested therein, if summons has been served, and no answer has been filed, if plaintiff fails, or has failed, to have judgment entered within three years after service of summons, except where the parties have filed a stipulation in writing that the time may be extended.''

The contention just stated is untenable. A proceeding for the involuntary winding up and dissolution of a corporation is governed by statute (see Ballantine & Sterling, California Corporation Laws (4th ed. 1962) §§ 359-361; Advising California Business Enterprises (Cont. Ed. Bar) p. 1109) and is a special proceeding. (*Esparza* v. *Kadam, Inc.,* 182 Cal.App. 2d 802, 807 [6 Cal.Rptr. 450].)³ The effect of the

---

³In 1 Witkin, California Procedure, pages 490-491, it is said in part as follows: '' 'An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.' (Code Civ. Proc., § 22.) Thus, so far as *civil actions* are concerned . . . an 'action' means the same thing as a 'suit.' The broad definition covers suits at law or in equity [citation]; certain adversary proceedings which take place during a probate proceeding . . .; and actions for declaratory relief [citation]. . . . Code Civ. Proc., § 23 states: 'Every other remedy is a special proceeding.' Thus, a legal proceeding which, under the common law and equity practice, was not an action at law or a suit in equity, is a special proceeding. . . . The two chief characteristics of special proceedings are: (1) They are established by statute, and (2) the statutes usually (though not invariably) create new remedies unknown to the common law or equity courts.'' (See also *Boggs* v. *North American B. & M. Co.,* 20 Cal.App.2d 316, 319 [66 P.2d 1253]; *Carpenter* v. *Pacific Mut. Life Ins. Co.,* 10 Cal.2d 307, 327 [74 P.2d 761].)

portion of section 581a of the Code of Civil Procedure upon which the appellants place reliance is to prevent the entry of a default judgment pursuant to the provisions of section 585 of the Code of Civil Procedure. But an analysis of the latter section leads to the conclusion that it does not have applicability to a proceeding of the nature of that involved herein because the issues inherent in such a proceeding could not be finally adjudicated forthwith upon the entry of the default of the corporation.[4]      While the default of the defendant corporation might be considered to be an admission of the matters well pleaded in the complaint (see 2 Witkin, California Procedure, p. 1700), at most such an admission in the present case went no further than to concede that there existed a ground for the winding up and dissolution of the corporation and to admit that, as alleged in the complaint, those interested in the corporation as creditors or shareholders should be required to make known their claims so that they might be recognized in the disposition of the assets of the corporation. As has been noted, section 4660 of the Corporation Code provides as follows: ''Involuntary proceedings for winding up a corporation are deemed to commence when the order for winding up is entered.'' Section 4661 of the Corporations Code provides that thereupon the directors ''shall cause written notice of the commencement of the proceeding for involuntary winding up or dissolution to be given by mail to all shareholders and to all known creditors and claimants whose addresses appear on the records of the corporation.''      The proceeding may not reach a conclusory stage until the court makes an order declaring the corporation wound up and dissolved.[5] Thus, the nature of the proceeding excludes it from

[4]''The dissolution of a corporation really is the end result of a three-phase operation, the completion of any one or all of which may take some period of time. The three phases are: (1) the taking of some affirmative action, voluntarily or involuntarily, to begin the winding up process; (2) the actual winding up of the affairs of the corporation, including the liquidation of its assets, the payment of debts, and the distribution of property to the shareholders; and (3) the final dissolution of the corporation.'' (Advising California Business Enterprises (Cont. Ed. Bar) p. 1110.)

[5]Section 5204 of the Corporations Code is in part as follows: "If winding up and dissolution is by court order or decree, upon the final settlement of the accounts of the directors or trustees and the determination that the corporation's affairs are in condition for it to be wound up and dissolved, the court may make an order declaring the corporation duly wound up and dissolved. . . . The court may make such additional orders and grant such further relief as it deems proper upon the evidence submitted.''

the scope of section 581a of the Code of Civil Procedure.

Another contention of the appellants is that the superior court had no jurisdiction to make the decree or order that the corporation be wound up and dissolved until the respondent Hagan had been accorded an opportunity to establish his status as a shareholder. The argument is based upon the determination of the Supreme Court that the superior court should not enter "judgment in the involuntary dissolution proceedings" until Hagan had been accorded such opportunity. (*Hagan* v. *Superior Court,* 53 Cal.2d 498, 504-505 [2 Cal.Rptr. 288, 348 P.2d 896].) The contention, however, is not sound. That a judgment of the nature meant in the language of restraint used by the Supreme Court has not as yet been rendered is clear from the discussion in the preceding paragraph of this opinion.

The appellants assert that if the decree or order of November 14, 1961, was valid, thereafter the superior court did not have jurisdiction to order that new certificates of stock be issued to the respondents. The argument made is that "after a decree of winding up and dissolution has been entered, the corporation may *not* engage in business by reissuing stock transferred by one of its shareholders to another person." Such argument is not in harmony with the present statutory provisions. (See 3 Witkin, Summary of California Law (7th ed.) pp. 2398-2399.) ▆▆ As stated in the work entitled Advising California Business Enterprises (Cont. Ed. Bar), at page 1134: "The commencement of involuntary proceedings is not equivalent to a dissolution of the corporation, and it does not terminate the legal existence of the corporation. It merely authorizes and directs a winding up and eventual dissolution." The corporation may continue to carry on business "to the extent necessary for the beneficial winding up thereof." (Corp. Code, § 4661.) ▆▆ Generally, the board of directors continues to function as a board during the process of winding up. (Corp. Code, § 4802; Ballantine & Sterling, California Corporation Laws (4th ed. 1962) § 369; Advising California Business Enterprises (Cont. Ed. Bar) pp. 1136-1137.)

There is a purpose to be served, apart from the matter of the determination of the persons entitled to receive distribution of assets, in having the corporate records correctly reflect the names of the owners of stock while the process of winding up is in progress. This is evident from the provisions of section 4803 of the Corporations Code, which are as follows: "A vacancy occurring in the office of director by death, resigna-

tion, failure or inability to act; or otherwise, during voluntary or involuntary dissolution or winding up of a corporation, may be filled by the vote or written consent of the holders of shares representing a majority of the voting power. Until such action by shareholders a majority of the remaining directors, though less than a quorum, may fill the vacancy; but at any time thereafter the person so appointed may be removed and his successor elected by the vote of the holders of shares representing a majority of the voting power.'' (See also Corp. Code, §§ 4804-4807.)

■ It is the appellants' position that they were denied a fair hearing because they were not permitted to show that the respondent Hagan ''acquired these certificates of stock for an ulterior purpose and in bad faith.'' The gist of the offer of proof was that Hagan was motivated in his actions by his animosity toward Mr. Fairfield, the attorney for the appellants, and by his desire to bring pressure to bear upon Mr. Fairfield with respect to another matter, which motivation had been manifested in many instances and in diverse ways. The trial court took the position that the proceeding then before it was ''one solely and only . . .to determine ownership of shares of stock'' and to provide for ''the transfer of shares of record,'' as a matter pertinent to the proceeding for the winding up and dissolution of the corporation. In Christy, The Transfer of Stock (3d ed. 1962), it is stated (§ 270) : ''As a general rule, the motive for which stock is transferred does not affect the right of the assignee to have the stock transferred to him; but if the assignee is not the real owner of the stock, or if it is clearly shown that he is seeking the transfer for purposes inimical to the corporation which are so iniquitous that a court of equity would decline to aid him, the corporation may rightly refuse to make the transfer.''. (See also 12 Fletcher, Private Corporations (1957 rev.) § 5530.) The evidence rejected 'did not relate to any purpose to harm the corporation which was in process of winding up. ■ Moreover, the control of the court over the proceedings is such as to afford protection to the corporation, its shareholders and creditors, against any harmful or unconscionable conduct on the part of a particular shareholder. (See *Hagan* v. *Superior Court, supra,* 53 Cal.2d 498, 503-504.) ■ There was no error.

■ The final contention of appellants is that it was error to refuse to permit impeachment of the respondent Hagan as a witness by showing that he had been convicted of a felony.

(See Code Civ. Proc., § 2051.) The ground upon which the trial court apparently based its ruling was that after Hagan's conviction of grand theft he had been granted probation without the imposition of sentence. The ruling appears to have been erroneous. (See *People* v. *Burch,* 196 Cal.App.2d 754, 768-769 [17 Cal.Rptr. 102].)[6] However, in view of the substantial nature of the evidence as to Hagan's ownership of the certificates for shares of stock which he desired to have transferred into his name, such error caused no miscarriage of justice.[7]

The judgment is affirmed.

Shinn, P. J., concurred.

Files, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied August 26, 1963, and appellants' petition for a hearing by the Supreme Court was denied October 1, 1963.

---

[6] In the *Burch* case, Justice Tobriner stated (196 Cal.App.2d, at p. 769): ''Appellant argues that . . . 'no judgment had been entered and . . . probation had been granted . . .' . . . [T]he conviction could still be treated as a felony for the purpose of impeaching appellant. The probation and the expiration of the period of probation as to the offense do not negate the prosecution impeachment 'by showing . . . [appellant's] conviction of a felony even though thereafter he obtains a dismissal of the action under [Pen. Code] section 1203.4.' (*People* v. *O'Brand* (1949) 92 Cal.App.2d 752, 756 [207 P.2d 1083].)''

[7] That the appellants appreciate the nonprejudicial character of the matter is shown by the following excerpt from their reply brief: ''However, if this were the only error committed by the trial court, appellants concede that in and of itself would not warrant a reversal. That error standing alone would not even warrant the appeal. It is raised only in connection with other errors.''