[Civ. No. 31187. Second Dist., Div. Four. Mar. 27, 1968.]

DEBBIE REYNOLDS, Plaintiff, Cross-defendant and Respondent, v. SPECIAL PROJECTS, INC., et al., Defendants, Cross-complainants and Appellants.

Gould, Magaram & Riskin and Ira D. Riskin for Defendants, Cross-complainants and Appellants.

Wright, Wright, Tolton & Rice and David Gorton for Plaintiff, Cross-defendant and Respondent.

KINGSLEY, J.—In 1959 Jess S. Morgan, agent for plaintiff Debbie Reynolds, approached defendant H. G. Saperstein, an experienced "merchandiser of personalities," in connection with the "merchandising" of Debbie Reynolds' name. "Merchandising" of personalities consists of licensing manufacturers and retailers to attach the name of the personality to their product to promote their sales in exchange for a fee payable to the personality.

Morgan wished to use a corporation in order to avoid the effect of certain tax provisions unfavorable to Debbie Reynolds, and Saperstein agreed. The parties agreed to use a then existing corporation, defendant Special Projects, Inc., and plaintiff became the record holder of 73 shares of stock of Special Projects, Inc., out of a total of 150 outstanding shares.[1]

Special Projects, Inc., through its president, H. G. Saperstein, began merchandising the name "Debbie Reynolds," and expending money. All parties anticipated entering into a written agreement. On November 2, 1959, Saperstein mailed to plaintiff an interim agreement providing, among other things, a five-year exclusive license for the use of Debbie Reynolds' name by defendant Special Projects, Inc. H. G. Saperstein testified that, prior to the preparation of the written agreement, the parties had agreed to a five-year period for the license. Plaintiff's agent, Jess S. Morgan, could not recall discussing a five-year term and testified that it might have been for a two or three-year period. Jess Morgan said that defendants were to have a *reasonable period of time* to spend the money, launch the project and give it a chance to mature and yield profits to the parties. Plaintiff's agent admitted having received and read the interim agreement, but plaintiff's agent did not sign it because the agreement contained things which he and Mr. Saperstein had not discussed, and it omitted some things they had discussed. Saperstein spent time, effort and money on promotion and Debbie Reynolds and Jess S. Morgan were aware that defendants were working on the project. Defendant Special Projects, Inc., continued to merchandise the Debbie Reynolds' name until April 22, 1963, when plaintiff, through her attorney, revoked the right to continue using her name.

Plaintiff filed an action on May 2, 1963, seeking the involuntary winding up and dissolution of Special Projects, Inc., on the grounds that there was internal dissension and the two

---

[1]Two shares were issued to William Reynolds.

factions of shareholders were so deadlocked that the corporation could no longer be conducted with advantage to its shareholders, and second, that the liquidation of Special Projects, Inc., was necessary for the protection of the plaintiff in that Special Projects, Inc., had made loans of money to H. G. Saperstein without the vote or written consent of the holders of two-thirds of the other shares. Defendants answered, denying deadlock or that liquidation was necessary and cross-complained seeking to enjoin plaintiff from cancelling the license or licensing other persons for the remainder of the five-year contract.

The court entered an "Interlocutory Decree Ordering Winding Up Of Corporation" which also denied defendants any relief on the cross-complaint. Defendants appealed.

Defendants assert that the decree is final, not interlocutory; that defendants are entitled to a decree enjoining plaintiff from cancelling the license agreement because the evidence established without contradiction that plaintiff was estopped from denying the five-year exclusive license agreement; that the court should not have decreed the dissolution of defendant Special Projects, Inc.; that finding of fact number 9 is not supported by the evidence; and, that finding of fact number 4 is beyond the scope of the pleadings.

I

Defendants' first assertion is that the decree is not interlocutory in nature but is final. ■ Defendants correctly argue that whether a decree is entitled interlocutory or final does not determine whether it is essentially interlocutory and nonappealable, or whether it is final and therefore appealable. (*Lyon* v. *Goss* (1942) 19 Cal.2d 659, 669-670 [123 P.2d 11].) ■ They argue that, in the case at bench, all that remains to be done is a final accounting, and that under such circumstances the judgment is final. We conclude that an order, such as the one before us, made pursuant to section 4657 of the Corporations Code in an involuntary dissolution proceeding, is final for the purpose of appeal.

Although there seems to be no judicial decision on the point, the statute on involuntary dissolution seems to imply the appealability of a section 4657 order. It is that order which commences "involuntary proceedings for winding up" the corporation (Corp. Code, § 4660), and it is that order which compels the cessation of the business of the corporation. Section 4661 reads as follows: "When an involuntary pro-

ceeding for winding up has commenced, the corporation shall cease to carry on business except to the extent necessary for the beneficial winding up thereof. The directors shall cause written notice of the commencement of the proceeding for involuntary winding up or dissolution to be given by mail to all shareholders and to all known creditors and claimants whose addresses appear on the records of the corporation, *unless the order for winding up has been stayed by appeal therefrom or otherwise, or the proceeding or the execution of the order had been enjoined.*" (Italics added.)

The parties have relied on various cases involving proceedings for the dissolution of partnerships. Defendants rely on two cases involving the dissolution of partnerships, wherein an order of dissolution was held to be final for the purposes of appeal even though certain matters remained to be decided.[2] Plaintiff cites us to other partnership cases in which it was held that the accounting proceedings therein involved and remaining to be determined were such as to make the dissolution order interlocutory.[3]

The partnership cases are not helpful to us in the case at bench. Ordinarily, a partnership is terminable at the demand of either partner (Corp. Code, § 15031) and the judicial proceeding under section 15032 of the Corporations Code does no more than give formal recognition to a fact already existing. But in case of an involuntary dissolution of a corporation under sections 4650-4661 of the Corporations Code, it is the judicial order for dissolution, made and entered under section 4657 which is the effective event (Corp. Code, § 4660). From and after the entry of that order, all business of the corporation must cease, except to the extent necessary to wind up its affairs. (Corp. Code, § 4661). In the case of partnerships, therefore, ordinarily no harm is done if appellate review is postponed until the liabilities are discharged, the assets are marshalled and the economic relations of the partners are determined; no disposition of an appeal will serve to revive a partnership already deceased when the court first intervened to probate its affairs. In contrast, in the case of the corporation, a reversal of an order of dissolution would operate to revive the entity and authorize it to continue its business. But such revival would be futile if, in the meantime, the corpora-

---

[2]*Zappettini* v. *Buckles* (1914) 167 Cal. 27 [138 P. 696]; *Grable* v. *Damar Production Co.* (1965) 232 Cal.App.2d 510 [43 Cal.Rptr. 16].

[3]*Gollard* v. *Bayless* (1959) 174 Cal.App.2d 827 [345 P.2d 299]; *David* v. *Goodman* (1948) 89 Cal.App.2d 162, 168 [200 P.2d 568].

tion has been required (as section 4661 requires) to cease operations and to convert its assets into distributable form. By the time an appeal from the final order under section 5204 has been decided, there will be no corporate business to resume. We conclude that the Legislature recognized this fact and that the language emphasized in section 4661 above quoted was intended to give to an order under section 4657 sufficient finality to support an immediate appeal.

## II

■ Defendants argue that the court should not have decreed dissolution of the corporation. We disagree. Section 4651, subdivisions (d) and (f) of the Corporations Code, on which plaintiff relies, provide for dissolution where: ''(d) There is internal dissension and two or more factions of shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders.''

''(f) The liquidation is reasonably necessary for the protection of the rights or interests of any substantial number of the shareholders, or of the complaining shareholders.''

The record shows that, at the time the action was filed, there were at least two substantial areas of disagreement between the shareholders: one over the length of time the license to use Miss Reynolds' name was to continue, and the claim that defendant Saperstein had improperly diverted corporate funds to his own use. When the trial court denied the cross-complaint and held that Miss Reynolds' termination of the license was valid, there remained no business reason for the corporation to continue. It is clear that the order for dissolution was proper.

## III

■ Defendants argue that they are entitled to a decree enjoining plaintiff from cancelling the license agreement because the evidence shows that plaintiff was estopped from denying the five-year exclusive license agreement. Defendants argue that plaintiff is estopped on the grounds that Jess Morgan received the written interim agreement with the five-year license provision, and that Morgan knew defendants were spending money in reliance on it. ■ The rule is ''. . . whether a contracting party should be estopped to assert the statute of frauds is usually a question of fact the termination of which, if supported by substantial evidence, will not be

502

disturbed on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts.'' (*Irving Tier Co.* v. *Griffin* (1966) 244 Cal.App.2d 852, 861 [53 Cal.Rptr. 469].)

 There is substantial evidence to support the trial court's conclusion that plaintiff is not estopped to assert the statute of frauds. There is evidence that the agreement in question was oral and at most was only to operate for a reasonable period of time. Jess Morgan testified that it might have been for a two or three-year period. The terms of the written unexecuted document sent to plaintiff's agent contained terms different from the terms Jess Morgan discussed with defendant Saperstein. Thus it would appear that if defendant Saperstein relied on the five-year term in the interim agreement he had no valid reason to do so, and defendants set forth no acceptable grounds for estoppel.

IV

 Defendants assert that finding of fact number 4, insofar as it provides that there was an oral agreement providing ''that plaintiff would receive one-half of the gross income of defendant, Special Projects, Inc., and defendant, H. G. Saperstein, would receive one-half of the gross income of Special Projects, Inc., less said corporation's expenses,'' is beyond the scope of the pleadings. Defendants argue that plaintiff has elected to rely on their stock ownership and they have abandoned the oral agreement. The defendants themselves put these issues into existence in paragraphs V and VII of their cross-complaint. Further, defendants' attorney asked defendant Saperstein and Jess Morgan questions relating to the division of profits, and Mr. Saperstein's and Mr. Morgan's answers supported the trial court's finding of fact number 4.

V

 Defendants also argue that finding of fact number 9 is without evidentiary support. The challenged finding reads as follows:

''9. Defendant, H. G. Saperstein, has made loans to himself from defendant, Special Projects, Inc., without first obtaining the vote or written consent of the holders of two-thirds of the outstanding shares of defendant, Special Projects, Inc., other than the shares held by H. G. Saperstein. By reason of said loans the amount owed defendant, Special Projects, Inc., by defendant, H. G. Saperstein, is $26,414.78.'' However, the order for dissolution, as ultimately signed and entered in

paragraph 3 directs Mr. Saperstein to repay the $26,414.78 "or such part thereof which [*sic*] has not been repaid as of this date."

The first sentence of the finding is amply supported by the record and, as we have indicated above, was a proper finding in support of the dissolution order. However, the last sentence of the finding, as modified by paragraph 3 of the order, decides nothing more than that defendant Saperstein should pay what he owes. As they presently stand they add only possible confusion to the proceedings yet to follow; those proceedings will be simpler if they are deleted.

The last sentence of finding number 9 is stricken; the order of March 22, 1966, is modified by deleting paragraph 3 thereof; as so modified, the order is affirmed. Plaintiff shall recover her costs on appeal.

Files, P. J., and Jefferson, J., concurred.