**KEENELAND ASSOCIATION, Appellant,**

v.

**Arnold G. PESSIN, Appellee.**

Court of Appeals of Kentucky.

June 30, 1972.

Rehearing Denied Oct. 6, 1972.

Robert M. Odear, W. T. Bishop III, Stoll, Keenon & Park, Lexington, for appellant.

F. Selby Hurst, Lexington, for appellee.

GARDNER, Commissioner.

By summary judgment Keeneland Association was directed to register in Arnold G. Pessin's name twenty-five shares of capital stock of Keeneland Association. Keeneland appeals. We affirm.

Dr. Pessin purchased twenty-five shares of Keeneland stock from one W. T. Markey for five dollars ($5.00). The new ownership was properly authenticated but Keeneland refused to transfer the stock on the corporation books on the ground that Dr. Pessin's purpose in acquiring the stock was to wreck the corporation and to use his position as a stockholder to aid him as a competitor.

We shall not indulge in a discussion of the acrimonious relationship of Dr. Pessin and Keeneland Association, except as it might have a bearing on the legal issues involved.

Keeneland points out that it was a non-profit corporation organized and formed for broad eleemosynary purposes. Under its articles no dividend would ever be paid to a shareholder and in the event of dissolution assets would be distributed to tax-exempt organizations. Other purposes for which Keeneland was organized were the improvement and betterment of racing in general, the improvement of a breed of thoroughbred horses and other livestock, and generally to promote the welfare of the horse industry.

Keeneland contends that Dr. Pessin and his associates not only did not share the lofty purposes expressed in the articles but, as evinced by their talk and action, were determined to do all in their power to destroy Keeneland. A close look at the record and applicable legal principles is required.

It is a well established rule that a corporation must transfer on its books the name of the owner of newly acquired stock. Mutual Telephone Co. v. Jarrell, 220 Ky. 551, 295 S.W. 865 (1927); 18 Am.Jur.2d, section 408, page 915. And the rule holds regardless of the motive of the person acquiring the stock. See Tobias v. Wolverine Min. Co., 52 Idaho 576, 17 P.2d 338 (1932); Carlson v. Ringgold County Mutual Telephone Co., 252 Iowa 748, 108 N.W.2d 478 (1961); Senn v. Union Premium & Mercantile Co., 115 Mo.App. 685, 92 S.W. 507 (1906). An exception to the rule is recognized in some jurisdictions where the new stockowner seeks the transfer for purposes seriously injurious to the corporation. In Rosner v. Benedict Heights, Inc., Cal., 219 Cal.App.2d 1, 32 Cal.Rptr. 764 (1963), the court said:

"In Christy, The Transfer of Stock (3rd ed. 1962), it is stated (§ 270): 'As a general rule, the motive for which stock is transferred does not affect the right of the assignee to have the stock transferred to him; but if the assignee is not the real owner of the stock, or if it is clearly shown that he is seeking the transfer for purposes inimical to the corporation which are so iniquitous that a court of equity would decline to aid him, the corporation may rightly refuse to make the transfer.'"

It is stated in 18 C.J.S. Corporations § 435, page 1051:

"A corporation may not refuse to transfer stock because of the motive which may have prompted . . . the

transferee to acquire, the stock, unless the transferee takes the stock . . . for some iniquitous purpose, . . . ."

In Funck v. Farmers' Elevator Co., 142 Iowa 621, 121 N.W. 53, 54 (1909), where the court was confronted with the question of whether the corporation must transfer the stock, it is stated: "To our minds this case presents something more than the mere motive of the plaintiff. The evidence discloses an active conspiracy, which it would be the duty of the court to enjoin if proper jurisdiction could be acquired." See also 12 Fletcher, Private Corporations (1957 Rev.), section 5530.

■ We do not find where this court has passed on the question of whether a corporation may refuse to transfer stock in the name of the transferee where it is shown there exists a conspiracy to destroy the corporation. It is recalled, however, that the case is before us on a summary judgment. Since Dr. Pessin established the ownership of the stock, the burden of proof was on Keeneland. This was conceded by Keeneland. Dr. Pessin insisted he did not intend to destroy Keeneland or to do anything to its detriment. On the contrary, he stated in his deposition and in his affidavit that his purpose in becoming a stockholder was to help Keeneland and the horse-racing business in Central Kentucky and that he had the best interest of Keeneland at heart. In the usual case in order to be successful a party moving for a summary judgment must present more than his own testimony as to his intentions and purposes. By the very nature of Keeneland's defense, namely, that Pessin's intentions were to act to the detriment of Keeneland, there was little Pessin could do but state his intentions. He has done that. At that point it was incumbent upon Keeneland to come forward with evidentiary material showing there was a genuine issue as to a material fact or that Dr. Pessin was not entitled to a judgment as a matter of law. CR 56.03. Keeneland had repeated adequate opportunity to make the showing required by Pessin's motion for summary judgment. When this effort was assessed in view of the total case, including the rule of substantive law Keeneland claimed was applicable, it was apparent that Keeneland could not prevail at trial.

■ Keeneland has pointed to nothing concrete in the record to substantiate the claim of conspiracy to destroy, nor has it demonstrated that such facts exist. It argues strongly that the totality of expressions in the pleadings, affidavits, exhibits and depositions is sufficient to establish that there was a genuine issue of fact so as to preclude a summary judgment. After a careful analysis of the record we are constrained to disagree with Keeneland. In doing so we have considered Keeneland's additional argument that the very nature of its defense is one that is unusually difficult to prove and that by supplementing its original efforts with additional proof at the trial the cumulative effect would be sufficient to present a triable issue. Keeneland correctly points out that on motion for summary judgment the court should view the evidence in the light most favorable to the party against whom it is directed. Rowland v. Miller's Adm'r, Ky., 307 S.W.2d 3 (1957); Paul E. Hawkinson Co. v. Dennis (C.C.A. 5th Cir.), 166 F.2d 61 (1948). It must be admitted too that it is often difficult to prove intent and motive. Leech v. Farmers' Tobacco Warehouse Co., 171 Ky. 791, 188 S.W. 886 (1916); International Bankers Life Ins. Co. v. Holloway, Tex., 368 S.W.2d 567 (1963). Keeneland argues that the court should be particularly careful not to foreclose a litigant's opportunity to develop his case at the trial where questions of motive, intent and subjective feelings and reactions are the subject of inquiry, citing and quoting Cross v. United States (C.A. 2d Cir.), 336 F.2d 431 (1964); Alabama Great So. R. Co. v. Louisville & Nashville R. Co. (C.A. 5th Cir.), 224 F.2d 1 (1955); Gray Tool Co. v. Humble Oil & Refining Co. (C.A. 5th Cir.), 186 F.2d 365 (1951).

■ We find no fault with Keeneland's statement of the law relative to the rule

that the court should be cautious in rendering a summary judgment. It has failed to convince us, however, that it has shown that a genuine issue existed. Granted it is difficult to prove motive, purpose or intent, that is not sufficient reason to brush aside the requirements of the civil rules governing summary judgments. In Ginger v. Guardian Steel Corporation (C.A. 6th Cir.), 325 F.2d 664 (1963), where general allegations of fraud and deceit were made, the court held that the District Court was correct in granting defendant's motion for summary judgment as there was no genuine issue of fact. Cf. Fishman v. Teter (C.A. 7th Cir.), 133 F.2d 222 (1943). It was incumbent upon Keeneland to present facts, not necessarily to prove it would win in the end, but to show the existence of a genuine issue as to a material fact.

Keeneland argues further that Dr. Pessin was in the business of buying and selling thoroughbred horses in direct competition with Keeneland (a fact admitted by Dr. Pessin) and that as a registered stockholder of Keeneland he would have access to confidential information which could be used to the detriment of Keeneland. No cases are cited holding that a stockholder of a corporation may not legitimately carry on business in competition with the corporation. Cf. Day v. Walker, Ky., 445 S.W. 2d 422 (1969).

■ As a bulwark against a stockholder's using his position to cause harm to the corporation is KRS 271.395(4), which provides: "Every shareholder shall have a right to examine, in person or by agent or attorney, at any reasonable time or times, *for any proper corporate purpose,* the share register or duplicate, and the books of account and records of the proceedings of the shareholders and directors, and to make extracts therefrom." It is noted that a shareholder may examine the books only for a "proper corporate purpose." We do not believe that an intent to destroy a corporation, to bring vexatious suits, or to take unfair advantage for competition reasons could be included in the phrase "proper corporate purpose." Even though a transferee should intend to carry out these schemes, he would be precluded, as pointed out by the trial court, from consummating them because of the statute. The question is not so much whether the stockholder is entitled to have the stock transferred on the books but whether he uses his right to examine the books for proper corporate purposes.

■ Keeneland argues further that it was lulled into believing it was unnecessary to come forward with evidence showing Dr. Pessin's ulterior motives because the court's first ruling was that Keeneland did not have to transfer the stock. (Keeneland refers to the order overruling Pessin's motion for a summary judgment dated April 5, 1971.) The case was set for trial September 30, 1971, but because of illness of Keeneland's counsel, it was reset for November 16, 1971. Keeneland moved for another continuance and Pessin moved for a summary judgment. From the date of the order (April 5, 1971) overruling the first motion for a summary judgment to the date of the second motion for a summary judgment (November 15, 1971), affidavits and interrogatories were filed. An order setting a hearing on the motion for summary judgment was entered November 22, 1971. The order was endorsed by counsel for Keeneland. On December 8, 1971, an affidavit in opposition to the motion for summary judgment was filed. Depositions were taken in behalf of Keeneland on December 13, 1971. The court rendered its judgment sustaining the motion for summary judgment January 14, 1972. In view of the chronology of procedure outlined, we cannot believe Keeneland was misled into believing the trial court would not change its ruling.

The judgment is affirmed.

All concur.