[No. C053512. Third Dist. June 27, 2008.]

RICHARD DICKSON, Plaintiff and Appellant, v.
ROGER REHMKE, Defendant and Respondent.

**COUNSEL**

Ganzer & Williams and G. Michael Williams for Plaintiff and Appellant.

Kurt Henry Siebert for Defendant and Respondent.

**OPINION**

**DAVIS, J.**—Plaintiff Richard Dickson filed this action in February 2005 to dissolve the Lodi Beer Company, LLC (the company), of which he and defendant Roger Rehmke were the sole members, contending in essence that defendant had ousted him from the management and operation of the

enterprise. (Corp. Code, §§ 17350, subd. (c), 17351, subd. (a)(4).)[1] In February 2006, defendant Rehmke moved to avoid the dissolution through the purchase of plaintiff's interest at fair market value. (§ 17351, subd. (b)(1).) The trial court appointed three appraisers to determine the value of the membership interests of the parties. (*Id.*, subd. (b)(3).) On May 9, 2006, the court issued its alternative decree, which determined the value of plaintiff's membership interest and gave defendant 90 days to either buy plaintiff's share or allow the process of winding up and dissolution to begin (*ibid.*); if defendant elected to buy plaintiff's share, the court would enter judgment for defendant in the underlying matter assigning plaintiff's interests in the business to defendant. The clerk served the alternative decree on the same day. The court's decree (actually designated an "Order after Hearing on Valuation") is not in the correct form because it does not *expressly* provide in the alternative for the commencement of winding up and dissolution in the event of defendant's failure to make a timely tender. However, given the invocation in the ruling of section 17351 and a deadline for defendant's performance—which would have no meaning absent a sanction for nonperformance—we believe this is sufficient to constitute an alternative decree for purposes of the statute. Moreover, in light of defendant's timely tender, the absence of the express alternate disposition becomes immaterial. We would caution trial courts, however, that the preferred practice is to incorporate the admittedly archaic designation of a "decree" and to include expressly the alternate disposition.

On June 15, 2006, defendant tendered a cashier's check to plaintiff in the determined amount. On June 22, the court entered judgment on plaintiff's complaint in accordance with its May 9 alternative decree. On June 27, defendant served the judgment on plaintiff.

On August 24, 2006, plaintiff filed a notice of appeal. He purports to challenge the court's reliance on declarations in computing the interests of the parties in the business, claiming an entitlement to "an evidentiary hearing" on his assertion that the recitation of the capital accounts of the parties contained in an operating agreement (which he had executed) was not valid.

Defendant's opposition brief argued the notice of appeal was not timely. As plaintiff did not file a reply brief, we issued an order to show cause on the issue. Upon receipt of plaintiff's response, we declined to dismiss the appeal at that time, deferring the resolution for our plenary consideration and any oral argument of the parties. We find that section 17351 contemplates an appeal from the alternative decree. We shall therefore dismiss the appeal as untimely.

---

[1] Hereafter, undesignated section references are to the Corporations Code.

No other facts are necessary to our analysis of the issue. We therefore proceed directly to our examination of the statute.

## DISCUSSION

### I

■ "Pursuant to an action filed by . . . any member . . . , a court . . . may decree the dissolution of a limited liability company whenever . . . [¶] . . . [¶] (4) [its] management . . . is deadlocked or subject to internal dissention." (§ 17351, subd. (a)(4).) The other members "may avoid the dissolution . . . by purchasing for cash the membership interests owned by the members so initiating the [dissolution] proceeding (the 'moving parties') at their fair market value." (§ 17351, subd. (b)(1).)

■ If the "purchasing parties" seek to pursue this option but are unable to come to an agreement with the moving parties on the value of the latter's interest, they may post a bond and apply to the court "either in the pending [dissolution] action or in a[n independent] proceeding initiated in the superior court" for a stay of the dissolution proceeding, at which point the court "shall proceed to ascertain and fix" the fair market value of the interest of the moving parties. (§ 17351, subd. (b)(2).) The court must appoint three appraisers, and "make an order referring the matter to the[se] appraisers . . . for the purpose of ascertaining that value," which order shall also "prescribe the time and manner of producing evidence . . . ." (*Id.*, subd. (b)(3).) The unanimous or majority award of the appraisers is "final and conclusive" on all parties upon its confirmation by the court. (*Ibid.*) The court must thereafter enter a decree that alternately directs the winding up and dissolution to proceed unless payment for the membership interests is tendered "within the time specified by the decree." (*Ibid.*) If the purchasing parties do not tender payment by the deadline, the court must enter judgment on their bond for the moving parties' expenses (including legal fees). (*Ibid.*) "Any member aggrieved by the action of the court may appeal therefrom." (*Ibid.*)

If the purchasing parties tender payment to the moving parties of "the value of their membership interests ascertained and decreed within the time specified pursuant to this section, or, in the case of an appeal, as fixed on appeal," the moving parties "shall transfer their membership interests to the purchasing parties." (§ 17351, subd. (b)(4).)

Neither the briefing nor our independent research has identified any cases involving these procedures in the context of limited liability companies.

However, parallel provisions exist for avoiding the dissolution of a corporation by purchasing the appraised interests of minority shareholders who initiated the corporate dissolution proceedings. (§ 2000.)[2]

## II

 As a prefatory matter, we note that the absence of either a unanimous or majority appraisers' award does not render section 17351's procedures inapplicable. It is, after all, "the *court*, upon application of the purchasing parties" which "shall proceed to ascertain and fix the fair market value of the membership interests . . . ." (*Id.*, subd. (b)(2), italics added.) The award of the appraisers does not bind the trial court; the court is free to select among conflicting opinions or decide the matter de novo. (*Venables v. Credential Ins. Agency, Inc.* (1956) 140 Cal.App.2d 724, 727 [295 P.2d 547] [parallel valuation procedure for minority shareholder interest; if convinced unanimous award wrong, "it was clearly the duty of the trial court to examine the matter de novo and to fix a proper value . . ."]; see *Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477, 491 [154 Cal.Rptr. 170] (*Brown*) [same context; noting de novo power, but court also may choose between conflicting awards without redeciding matter]; 2 Finkle et al., Marsh's Cal. Corporation Law (4th ed. 2008 supp.) § 21.08[B], pp. 21-43 to 21-44 (Marsh treatise).)

 The riddle in this appeal arises from the imprecise use of language in section 17351, subdivision (b)(3). It provides for any number of juristic activities: the court's appointment of appraisers, the order of reference to them for the purpose of ascertaining the dissenting share and setting the procedures for producing necessary evidence, the court's confirmation of the unanimous or majority appraisal award (or determination de novo of the matter), the alternative decree that directs the winding up and dissolution of the company unless the purchasing parties tender their payment in a timely

---

[2] This statute derives from former sections 4658 and 4659, which in turn derive from Civil Code former section 404 (Stats. 1931, ch. 862, § 2, pp. 1763, 1829) as amended in 1941 to add, among other language, subdivision (E), the pertinent language of which continues in Corporations Code section 17351 almost unchanged. (See Stats. 1941, ch. 610, § 2, pp. 2057, 2059 ["the court shall stay the [dissolution] proceeding and shall proceed to ascertain and fix the value of the shares . . . . For such purpose the court shall appoint three . . . commissioners to appraise the fair value . . . and shall make an order referring the matter to [them] for the purpose of ascertaining such value and such order shall prescribe the time and manner of producing evidence . . . . The award of such commissioners or of a majority of them, when confirmed . . . , shall be final and conclusive . . . and the court shall enter a decree for the amount of [the] award [against the purchasing shareholders and the sureties on their bond] . . . . Such decree may be in the alternative and provide for winding up and dissolution . . . unless payment is made for the shares within the time specified by the decree. Any shareholder feeling aggrieved by such action of the court shall have the right of appeal. The [majority shareholders] electing to purchase shall pay . . . the value of [the] shares ascertained and decreed as aforesaid or, in case of an appeal, as fixed on such appeal . . ."].)

manner, and a judgment on their bond for costs if they fail to act. Yet the concluding provision for appellate review employs an entirely different term with a specific determinative: "Any member aggrieved by *the action* of the court may appeal therefrom." (*Ibid.*, italics added.) Considering that all the other juristic activities in section 17351, subdivision (b)(3) are preliminary to the issuance of the alternative decree (cf. *Abrams v. Abrams-Rubaloff & Associates, Inc.* (1980) 114 Cal.App.3d 240, 247–248 [170 Cal.Rptr. 656] (*Abrams*) [parallel valuation process for corporations]), it is logical to conclude that the issuance of the decree is "the" action to which the provision for appeal refers.[3] This interpretation finds support in the text of the next subdivision, which separately focuses on the exercise of the purchase option. It requires the tender within the specified time period of the value "ascertained and decreed," or "in the case of an appeal, as fixed on appeal." (§ 17351, subd. (b)(4).) If "as fixed on appeal" is to have any meaning, the phrase must presuppose an appeal lies from the alternative decree, as none of the other juristic activities in the previous subdivision finally determine the value of the interest and the time period in which to tender it to the moving parties.[4]

■ That a judgment will follow the alternative decree upon a tender does not mean the party making or accepting the tender who is dissatisfied with the valuation may await its entry to appeal that issue. This later-entered judgment is on the underlying dissolution complaint for the purpose of terminating *that* proceeding through denying the requested relief. This judgment is not a vehicle for raising the issues of valuation on appeal, because the dissolution proceeding itself never embraced them.

■ This conclusion finds support in the purchase-option cases in the context of corporations, which assume (albeit without any analysis) that an appeal from the decree is proper where tender of payment is made. (*Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 70 [120 Cal.Rptr.2d 814] (*Trahan*); *Mart v. Severson* (2002) 95 Cal.App.4th 521, 529–530 & fn. 5, 536 [115 Cal.Rptr.2d 717] (*Mart*); *Esparza v. Kadam, Inc.* (1959) 170 Cal.App.2d 303, 304–305 [338 P.2d 492] (*Esparza*).) As for situations in which there is not a tender, the alternative decree in the section 17351 special proceeding provides for the

---

[3] The judgment for costs on the purchasing parties' bond would not, at least until 1989, have needed any express designation of appealability, being a collateral matter involving a species of monetary sanction. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 63, p. 118.) For this reason, it would not make any sense to apply the " 'last antecedent' " rule of interpretation (*People v. Le* (2006) 137 Cal.App.4th 54, 62 [39 Cal.Rptr.3d 741]), which would limit the reach of this provision for appeal to the immediately preceding action of entering judgment for costs on the bond.

[4] Once again, we do not believe the "last antecedent" rule would apply here to limit "as fixed on appeal" to the time for tender, as the 1941 statute made clear it was the amount of the award that was subject to adjustment on appeal without even mention of the time for tender.

start of winding up and dissolution; in the underlying dissolution action, such a decree is appealable even though it has the characteristics of an interlocutory order because it could lead to irremediable harm by the time of the final judgment in the dissolution action. (Cf. *Reynolds v. Special Projects, Inc.* (1968) 260 Cal.App.2d 496, 499–501 [67 Cal.Rptr. 374] [involving parallel process for corporations]; see *Rosner v. Benedict Heights, Inc.* (1963) 219 Cal.App.2d 1, 7–8 [32 Cal.Rptr. 764] [describing various stages of corporate dissolution proceedings].) The alternative decree should be appealable for the same reason in the absence of a tender because it has the same effect.

In short, both a reasonable reading of section 17351 and analogous case authority lead to the conclusion that the alternative decree is the pertinent action from which a party dissatisfied with the valuation process should take an appeal. However, the riddle of this appeal is wrapped in the enigmatic language of section 17351, subdivision (b)(3) that describes the confirmed award as "final and conclusive." *This* language would seem to preclude any appellate review of the only issues that would aggrieve a party to the special proceeding.

Curiously, cases involving this procedure in the context of corporations have accepted as a settled matter that the standard of review of substantial evidence applies to the confirmed value in the alternative decree of the minority interest. (*Trahan, supra*, 99 Cal.App.4th at p. 70 [citing, inter alia, Marsh treatise]; *Mart, supra*, 95 Cal.App.4th at pp. 530, 536; *Abrams, supra*, 114 Cal.App.3d at p. 250; *Brown, supra*, 91 Cal.App.3d at p. 485 [citing Marsh treatise].) It is troublesome that this authority simply fails to consider the express statutory designation of the confirmed award as final and binding. However, we have not found any criticism of this accepted practice. Whatever the initial legislative purpose in 1941 in using the phrase in the ancestor statute,[5] there has been at least legislative acquiescence to its elimination as an accepted practice. Therefore, we will accept this *result* in the context of limited liability companies, and leave it to the Legislature to determine if this comports with its intent on the manner in which these valuation proceedings should take place.

## III

█ The court's May 9 alternative decree was appealable; the subsequent judgment did not embrace the special proceeding or its valuation issues. As a

---

[5] If we were to hazard a guess in order to harmonize otherwise irreconcilable provisions, we would suggest that the intent was to prevent the parties from resorting to any of the ordinary procedures for direct attack in the trial court on the confirmed award.

result, the present purported appeal is not timely, even if we deem it to be from the alternative decree rather than the judgment. We will therefore dismiss the appeal.[6]

### DISPOSITION

The appeal is dismissed. Defendant will recover his costs of appeal. (Cal. Rules of Court, rule 8.278(a).)

Nicholson, J., concurred.

**BLEASE, Acting P. J.,** Concurring.—I concur in the judgment and opinion dismissing the appeal. I add these remarks because the governing statute, Corporations Code section 17351 (section 17351), does not precisely fit the facts of this case.[1]

The relevant facts are these: the plaintiff, Richard Dickson, filed an action to dissolve a limited liability company. The defendant, Roger Rehmke, to avoid dissolution of the company, invoked the provisions of section 17351, to establish and buy out plaintiff's membership interest. Three appraisers were

---

[6] In any event, the analogous authority in the context of corporations should demonstrate to the present parties that plaintiff did not waive his right to appeal (as defendant contends) when he accepted the tendered money for his interest in the company (*Esparza, supra,* 170 Cal.App.2d at pp. 305–306), and plaintiff's issue on appeal (a claim of a right to a full hearing on valuation) was without merit in any event (*Abrams, supra,* 114 Cal.App.3d at pp. 247–248, 249 [provisions of Code of Civil Procedure not applicable to this special proceeding; it is intended to be summary in nature without any provisions for discovery or evidentiary hearings involving testimony and cross-examination]).

[1] Section 17351, subdivision (b)(3), provides, in pertinent part, when the value of a limited liability company is in dispute, for the appointment of three disinterested appraisers for the purpose of "ascertaining [the] value" of the disputed interest. "The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree that shall provide in the alternative for winding up and dissolution of the limited liability company unless payment is made for the membership interests within the time specified by the decree. If the purchasing parties do not make payment for the membership interests within the time specified, judgment shall be entered against them and the surety or sureties . . . . Any member aggrieved by the action of the court may appeal therefrom."

Section 17351, subdivision (b)(4) provides: "If the purchasing parties desire to prevent the winding up and dissolution of the limited liability company, they shall pay to the moving parties the value of their membership interests ascertained and decreed within the time specified pursuant to this section, or, in the case of an appeal, as fixed on appeal. On receiving that payment or the tender thereof, the moving parties shall transfer their membership interests to the purchasing parties."

appointed, who could not agree on the value of Dickson's interest.[2] The trial court then determined the value and entered it in an "Order after Hearing on Valuation," dated May 9, 2006. Defendant tendered the amount specified in the order and a "judgment" was entered, incorporating the findings of fact of the order and directing the transfer of Dickson's membership interests to Rehmke. A notice of entry of judgment was served on Dickson on June 27, 2006. The notice of appeal "from the judgment" was filed on August 24, 2006.[3]

The timeliness of the appeal turns on whether service of the judgment or the decree commences the 60-day period of the statute of limitations. I agree that it is the decree.

Subdivision (b)(3) of section 17351 provides that "[a]ny member aggrieved by the action of the court may appeal therefrom." The question is whether "action of the court" refers to the decree or the judgment.

The sentence immediately preceding "action of the court" refers to a judgment, but only to a judgment dissolving the limited liability company if "the purchasing parties do not make payment . . . ." (§ 17351, subd. (b)(3).) That is not the judgment entered in this case; it ordered the transfer of Dickson's membership interests to Rehmke. The only other "action of the court" referred to in subdivision (b)(3) is "a decree that shall provide in the alternative for winding up and dissolution of the limited liability company unless payment is made for the membership interests within the time specified by the decree." That necessarily is the action to which subdivision (b)(3) must refer. The trial court's "Order after Hearing on Valuation" does not precisely fit that description since, although it provides for payment, it is not phrased in the alternative. But it is the only order that comes close to the decree described in the statute.

---

[2] There was no award by a "majority" of the three appraisers, as required by section 17351, subdivision (b)(3), since the appraisals were $0, $156,000, and $286,000. Consequently there was no appraisers' award to confirm by decree and the court did not do so. Rather, the court was asked by Rehmke to determine the value in the sum of $147,333.33, which it did, based on the "mean" value of the three different appraisals. The court further split the ownership 50/50 between plaintiff and defendant, notwithstanding that the appraisers had wildly varying estimates of the parties' percentage interests.

[3] It is apparently Dickson's position that the incorporation of the findings of fact of the order after valuation into the judgment subjects them to challenge on appeal. However, for reasons stated above, the judgment is not the "action of the court" to which the appeal provisions of section 17351, subdivision (b)(3), refer.

Accordingly, it is the decree (order after valuation) that is subject to an appeal. The appeal in this case is without the period of limitations that commenced with the order and must be dismissed.