Filed 5/10/16  Sihota v. Sihota CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PAUL SIHOTA et al., | F070363 |
| Plaintiffs and Appellants, | (Super. Ct. No. 11CECG01919) |
| v. | |
| SARDUL SINGH SIHOTA et al., | **OPINION** |
| Defendants and Respondents. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Tritt & Tritt and James F. Tritt for Plaintiffs and Appellants.

The Law Office of G. Bryan Pinion and G. Bryan Pinion for Defendants and Respondents.

-ooOoo-

Appellants, Paul Sihota and Rajneet Sihota, challenge the judgment entered in favor of respondents, Sardul Singh Sihota and Jitendra Kaur Sihota, on Paul and

Rajneet's breach of oral contract claim.[1]  According to Paul, his father, Sardul, and his stepmother, Jitendra, promised to transfer a ranch to Paul and his wife, Rajneet, if Paul performed as requested by Sardul.  Sardul denied ever making any such promise.

Following a bench trial, the court held that the alleged promise was unenforceable. The court questioned whether any contract was formed at any time.  The court further concluded that, in any event, the statute of frauds barred enforcement of any alleged oral contract.

The trial court's conclusions are supported by the record and the law. Accordingly, the judgment will be affirmed.

## BACKGROUND

Sardul owned several ranches on which he primarily grew raisin grapes.

In 1994, Sardul and Jitendra purchased a ranch, referred to as the Temperance Ranch or "Frank's [R]anch."  They put Paul's name, along with theirs, on the deed to that ranch.  Sardul testified he decided to put Paul's name on the deed "[j]ust like parents would do for their children" and to "build up his credit."  Paul never made any financial contribution to the Temperance Ranch.

At trial, Paul testified that when he was in high school and college, Sardul told Paul that if he stayed in school, was a good son, continued to work on the ranches, and married an Indian girl, i.e., a Sikh girl, Sardul and Jitendra would take care of him financially.

While in school, Paul worked on the family ranches.  Paul was never paid, but received spending money and his parents paid for his education.  Paul graduated from college in 1994.

In 1996, Sardul and Jitendra were looking for a wife for Paul.  The family traveled to India for this purpose.  While in India they conducted numerous interviews of the

---

[1]    We refer to the parties by their first names for clarity and convenience.

parents of potential brides. In the Sikh culture, the boy's parents take responsibility for finding a suitable wife. If both sets of parents think a match looks promising, the boy and girl spend some time alone together. Thereafter, if the boy and girl are interested, the match will be pursued. Paul's family and Rajneet's family first met on February 21, 1996 and Paul and Rajneet were married on March 16, 1996.

Rajneet testified that when she met Sardul, he told her "'I will take real good care of you. You won't be wanting for anything. And I do quite well.'" Sardul repeated this promise when Rajneet and Paul got engaged. According to Rajneet, between the engagement and the wedding Sardul told Rajneet and Rajneet's father "'I'm going to give them their own ranch so they will be independent. That they don't have to depend on us.'" Rajneet explained that this promise was important to her because her family had "provided for everything" and "[i]t was same expectation when I marry I will be taken care of." Sardul denied ever telling Rajneet's parents that if they allowed their daughter to marry Paul, he would give Paul and Rajneet a ranch of their own.

When Rajneet arrived in California in September 1996, she and Paul moved into a house on the Elkhorn Ranch, a ranch owned by Sardul. Paul and Rajneet lived in this house until they bought their own home in 2012. During the time Paul and Rajneet lived in the Elkhorn house, they never made a mortgage or rent payment and Sardul paid certain other of their bills. Rajneet learned around 1999 that the Elkhorn Ranch was not in their name.

Paul worked on the ranches until 1999. At that time, he began working full time for other employers.

In 2002, Sardul, along with other Fresno area grape growers, was having a difficult time financially. Sardul told Paul that he was behind on his payments and needed to sell the Temperance Ranch. Sardul explained that if he did not sell the Temperance Ranch, it, and other properties, would probably be lost in foreclosure. The Temperance Ranch was the ranch with "a little bit of equity." Paul and Rajneet agreed to

sign the Temperance Ranch deed. Paul and Rajneet both testified that Sardul promised to put the Elkhorn Ranch in Paul's name when things were better financially and that was why they signed off on the Temperance Ranch sale. Sardul denied ever telling Paul and Rajneet that he would make that transfer.

Thereafter, Paul asked Sardul if he could have a 99-year lease on the Elkhorn Ranch but Sardul turned him down. In 2010, Sardul offered to sell the Elkhorn Ranch to Paul but no serious steps were taken in that direction.

In April 2012, Paul and Rajneet moved into their own home. They paid $650,000 for the house with a $200,000 down payment.

Paul filed a complaint against Sardul and Jitendra in June 2011 alleging causes of action for breach of contract, fraud, constructive trust, negligence and declaratory relief. Thereafter, Paul amended the complaint to add Rajneet as a plaintiff. According to Paul and Rajneet, their claim accrued in January 2011 when Sardul and Jitendra repudiated their promise to transfer the Elkhorn Ranch.

Following a bench trial, the court ruled in favor of Sardul and Jitendra. The court noted that the parties characterized the alleged contract differently. Sardul and Jitendra asserted Paul and Rajneet were alleging three separate contracts, the "good son, stay in school, work, marry an Indian girl" agreement with Paul, the promise to take care of Rajneet, and the 2002 Temperance Ranch transfer. In contrast, Paul and Rajneet argued there was one contract that continued in effect until January 2011.

The court concluded it did not matter how many contracts were alleged because it was questionable whether "any contract was formed at any time." The court noted that: the "be a good son," and "stay in school" contract terms were vague; the "continue to work on the ranches" term was unsupported by the evidence; and the "marry an Indian girl" term was illegal as a restraint on marriage. The court further found that, in any event, the statute of frauds barred enforcement of any alleged contract. Regarding Sardul's alleged promise to transfer the Elkhorn Ranch to Paul and Rajneet in exchange

4.

for their relinquishing Paul's interest in the Temperance Ranch, the court found Sardul's testimony was credible and concluded no such promise was made.

## DISCUSSION

Paul and Rajneet argue the trial court applied erroneous legal standards in determining that the alleged contract was unenforceable. According to Paul and Rajneet, the trial court should have analyzed the contract terms of "be a good son, stay in school, continue to work on the family ranches, marry an Indian girl" and the promises made to Rajneet and her family while arranging the marriage, in the context of the Sikh culture. If the court had done so, they contend the court would not have found the agreement to be vague and illegal.

However, regardless of the context in which the trial court analyzed the alleged contract, it is barred by the statute of frauds.

The statute of frauds requires contracts for the transfer of real property to be in writing. (Civ. Code, § 1624, subd. (a); *Alameda Belt Line v. City of Alameda* (2003) 113 Cal.App.4th 15, 20.) Accordingly, the alleged oral contract for the transfer of the Elkhorn Ranch is unenforceable under the statute of frauds.

Paul and Rajneet argue that the doctrine of equitable estoppel applies and therefore the contract is not barred by the statute of frauds. They further argue that they performed their obligation under the contract and thus fall under the part performance exception to the statute of frauds.

A party may be equitably estopped from asserting a statute of frauds defense. "The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract [citations], or in the unjust enrichment that would result if a party who has received the

5.

benefits of the other's performance were allowed to rely upon the statute." (*Monarco v. Lo Greco* (1950) 35 Cal.2d 621, 623-624 (*Monarco*).)  Whether the court should apply the doctrine of equitable estoppel in a given case is generally a question of fact.  (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1068.)

Paul and Rajneet contend that Sardul and Jitendra are equitably estopped from relying on the statute of frauds based on *Monarco*.  In *Monarco* the court enforced an oral agreement to transfer agricultural property upon the promisor's death where the promisee agreed to remain home and work for the family venture, receiving only room and board and spending money.  Because the promisee, in reliance on the agreement, devoted his life to making the family venture a success and gave up the opportunity to accumulate property of his own, the court concluded that he would be seriously prejudiced by a refusal to enforce the agreement and that the promisor and his devisees would be unjustly enriched if the statute of frauds could be invoked.  (*Monarco, supra,* 35 Cal.2d at pp. 623-625.)

Here, however, the trial court found that neither Paul nor Rajneet detrimentally relied on the alleged contract to transfer the Elkhorn Ranch or suffered unconscionable injury.  The court concluded that, unlike the promisee in *Monarco*, Paul did not forbear all other employment opportunities to work on the ranches.  Rather, Paul began working full time for other employers in 1999 and was permitted to live rent free on the Elkhorn Ranch until 2012.  The court noted that in 2012, Paul and Rajneet were able to purchase a $650,000 house and had saved enough money to make a $200,000 down payment.

The court stated that Rajneet appeared to claim unconscionable injury or detrimental reliance based on marrying Paul and moving to the United States in part because of Sardul's promise that they would be given a ranch.  The court concluded that Rajneet did not prove her claims noting that Rajneet was still married to Paul, they both were employed with good jobs, and they were able to purchase a home after living rent free for many years.

6.

As noted above, whether a party should be estopped to assert the statute of frauds is usually a question of fact. Thus, the trial court's determination, if supported by substantial evidence, will not be disturbed on appeal unless the contrary conclusion is the only one that can be reasonably drawn from the facts. (*Reynolds v. Special Projects, Inc.* (1968) 260 Cal.App.2d 496, 501-502.)

Here, the record supports the trial court's conclusion that Paul and Rajneet did not detrimentally rely on the alleged promise and were not seriously prejudiced. Neither one presented evidence of unconscionable injury.

Further, the trial court's finding that Sardul will not be unjustly enriched if the statute of frauds is applied is also supported by the record. The court found Sardul's testimony that the sale of the Temperance Ranch was necessary to avoid the risk of foreclosure of the remaining properties to be credible. All questions of the credibility of witnesses and the weight of their testimony are for the trier of fact. (*Nichols v. Mitchell* (1948) 32 Cal.2d 598, 606.) Further, there was no evidence that Paul made any payments toward any of the ranches.

Paul and Rajneet claim that they partially performed when they signed off on the Temperance Ranch in reliance on Sardul's promise to transfer the Elkhorn Ranch in exchange. Part performance of an oral agreement for the transfer of an interest in real property may, under certain circumstances, except the agreement from the statute of frauds. (*Sutton v. Warner* (1993) 12 Cal.App.4th 415, 422.)

However, the trial court found Sardul's testimony regarding the sale of the Temperance Ranch to be credible and concluded that no such promise was made. As noted above, questions of credibility are for the trial court. Sardul's testimony that he did not promise to transfer the Elkhorn Ranch to Paul and Rajneet in exchange for their signing off on the Temperance Ranch sale supports the trial court's finding. Since Sardul did not promise to transfer the Elkhorn Ranch, there could be no partial performance.

7.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

_____
LEVY, J.

WE CONCUR:


_____
HILL, P.J.


_____
DETJEN, J.