Filed 9/1/21; Certified for Publication 9/22/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BERNICE CHENG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COASTAL L.B. ASSOCIATES,<br>LLC, et al.,<br><br>    Defendants and<br>Respondents. | B303519<br><br>(Los Angeles County<br>Super. Ct. No. BC680509) |

    APPEAL from an order of the Superior Court of Los Angeles County, Dennis Landin, Judge.  Affirmed.
    Robert D. Feighner for Plaintiff and Appellant.
    Einwechter & Hyatt and John P. Einwechter for Defendants and Respondents.

\* \* \* \* \* \*

This action concerns the purchase of minority interests in a California limited liability company pursuant to Corporations Code section 17707.03, subdivision (c).[1]  The subject limited liability company, Clary Associates, LLC (the LLC), is owned equally by siblings Bernice Cheng (appellant), Arlene Cheng (Arlene), Caroline Cheng Jones (Caroline), and Diana Cheng (Diana).[2]  Appellant challenges the trial court's order confirming a majority appraisers' award valuing the parties' respective 25 percent interests in the LLC at a discounted fair market value of $623,979 and setting a final buyout price of $621,954.

We affirm the trial court's order.

## BACKGROUND

### Involuntary dissolution action and election pursuant to section 17707.03

Appellant filed an action for involuntary dissolution of the LLC in October 2017.  Respondents moved for an order staying the dissolution action and electing to purchase appellant's and Arlene's interests in the LLC pursuant to section 17707.03.  The parties thereafter stipulated to an order staying the dissolution action and appointing three appraisers to determine the fair market value of their respective 25 percent interests in the LLC "using generally accepted appraisal and reporting methods and standards" under section 17707.03.  The parties stipulated that "[t]he term 'fair market value' shall be defined as commonly

---

[1]    All further statutory references are to the Corporations Code.

[2]    Because the parties share the same surname, we refer to them by their first names to avoid confusion.  Caroline and Diana are referred to collectively as respondents.

understood in the appraisal industry, California statutes, and precedents which have applied Corp. Code 17707.03." The parties further stipulated that "[t]he award of the appraisers, or a majority of them when confirmed by the court, shall be final and conclusive upon all parties, pursuant to § 17707.03(c)(3)." The parties' stipulation also stated: "Arlene and Bernice have not alleged any direct or derivative claims for damages against any defendant in this case.[3] Arlene and Bernice reserve the right to assert such claims in the future if any evidence supporting such allegations comes to light, to the extent permitted by existing law, and to seek a lifting of the stay to the extent permitted by existing law. Caroline and Diana reserve the right to oppose any such requests."

Pursuant to the parties' stipulation, the trial court appointed John Thomson, Gazelle Wichner, and Laurence Sommer as appraisers. At the time of the appraisal, the LLC's sole asset was a single-story industrial warehouse located in San Gabriel, California. The building, which was appraised at $3 million in March 2018, was occupied by a single tenant whose five-year lease term was set to expire sometime in 2021. The three appraisers worked separately on their initial individual valuation reports, and each reached a different valuation.[4]

---

[3] Appellant's first amended complaint (FAC), the operative pleading at the time the parties entered into the stipulation, asserted causes of action for dissolution and partition only. As the basis for dissolution, the FAC alleged, among other grounds, mismanagement of the property owned by the LLC and respondents' "persistent and pervasive fraud, mismanagement and/or abuse of authority."

[4] Thomson calculated a value of $3,252,791 and applied a 31 percent discount, for a fair market value of $561,000. Wichner

3

Respondents filed a motion asking the trial court to instruct the appraisers to determine whether they could agree on a consensus valuation. Appellant opposed the motion. The trial court granted respondents' motion and instructed the appraisers to review their respective reports, confer with each other, and submit their joint conclusions as to the fair market value of the LLC interests.

The appraisers submitted a joint final report on August 20, 2019. In their joint report, the appraisers unanimously agreed on a net asset value of $831,973 for a 25 percent interest in the LLC as of October 20, 2017. The report stated that a majority of the appraisers agreed that the fair market value standard required consideration of discounts and "the value should be $623,979 after the application of a 27% discount applicable to a minority interest in the Clary Associates, LLC."

Respondents moved to confirm the appraisers' valuation on September 4, 2019. Appellant opposed the motion.

The parties then stipulated to an order allowing appellant to file a third amended complaint (TAC) in the stayed dissolution action.[5] The TAC, filed on October 15, 2019, and the operative

---

calculated a value of $3,040,000 and applied a 23 percent discount, for a fair market value of $610,000. Sommer calculated a value of $906,973 and concluded no discount was warranted.

[5] Appellant filed a second amended complaint on July 17, 2019, asserting new derivative causes of action for mismanagement and breach of fiduciary duty. Respondents notified appellant of their intent to demur on the grounds that the new derivative causes of action failed to allege statutory prerequisites for derivative actions and failed to allege sufficient facts to constitute any claims for mismanagement or breach of fiduciary duty. Appellant agreed to withdraw the derivative

4

pleading at the time of the LLC buyout, asserts causes of action for dissolution of the LLC, partition, and an accounting. As grounds for dissolution, the TAC alleges, among other grounds, mismanagement and conflicts of interest by respondents.

On November 12, 2019, the trial court confirmed the appraisers' discounted fair market valuation of a 25 percent interest in the LLC at $623,979. Pursuant to an agreement by the parties, the trial court ordered an additional deduction of $2,025 for reimbursement of appraisal fees and set a final buyout price of $621,954 for a 25 percent interest in the LLC. The trial court ordered respondents to prepare the necessary documents and to tender payment to complete the purchase of appellant's and Arlene's respective LLC interests by January 31, 2020. Appellant filed this appeal on January 8, 2020.

**CONTENTIONS ON APPEAL**

Appellant raises the following contentions on appeal:

I. The trial court's order instructing the appraisers to review each other's reports, confer with one another, and reach a consensus on the fair market valuation did not comply with the statutory procedures set forth in section 17707.03. That statute, appellant maintains, required the trial court either to confirm one of the three valuations initially submitted by the appraisers or to make a de novo determination of the fair market value of the LLC interests.

II. The consensus valuation confirmed by the trial court improperly discounted the fair market value of the LLC interests.

---

claims, and respondents stipulated to allow the filing of the TAC without any direct or derivative claims of mismanagement or breach of fiduciary duty.

5

Such discounts are disallowed under section 2000, which governs the buyout of shareholder interests in closely held corporations, and appellant argues that discounts should similarly be disallowed under section 17707.03.

III.  The valuation confirmed by the trial court improperly failed to account for appellant's mismanagement allegations.

## DISCUSSION

### I.  Applicable law and standard of review

Section 17707.03, subdivision (a), authorizes any member of a limited liability company to file an action to dissolve the limited liability company in certain specified circumstances.  The statutory grounds for dissolution include "[t]he management of the limited liability company is deadlocked or subject to internal dissension" (§ 17707.03, subd. (b)(4)), and "[t]hose in control of the limited liability company have been guilty of, or have knowingly countenanced, persistent and pervasive fraud, mismanagement, or abuse of authority" (§ 17707.03, subd. (b)(5)).

In any action for judicial dissolution, the other members of the limited liability company may avoid the dissolution by purchasing for cash the fair market value of the interests owned by the members initiating the dissolution proceeding. (§ 17707.03, subd. (c)(1).)  If the parties are unable to agree on a value, then "[t]he court shall appoint three disinterested appraisers to appraise the fair market value of the membership interests owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value. . . .  The award of the appraisers or a majority of them, when confirmed by the court,

6

shall be final and conclusive upon all parties." (§ 17707.03, subd. (c)(3).)

The appraisers' award does not bind the trial court. The court may select among conflicting appraiser opinions or decide the matter de novo. (*Dickson v. Rehmke* (2008) 164 Cal.App.4th 469, 475 (*Dickson*).) The trial court's valuation order is appealable. (§ 17707.03, subd. (c)(3); *Dickson*, at p. 476.) We review the trial court's valuation order under the substantial evidence standard. (*Dickson*, at p. 477.) We review de novo appellant's challenge to the trial court's statutory authority to order the appraisers to meet and confer and attempt to reach a consensus valuation. (See *Mart v. Severson* (2002) 95 Cal.App.4th 521, 530 [trial court's interpretation of statutory standard for valuation subject to de novo review]; *City of Desert Hot Springs v. Valenti* (2019) 43 Cal.App.5th 788, 793 [determination of proper scope of trial court's authority under statute is a matter of statutory construction subject to de novo review].)

## II. Alleged failure to follow statutory procedures

### A. *Section 17707.03 does not prohibit the trial court from ordering the appraisers to meet and confer and does not require the trial court to make a de novo determination of value*

The trial court's order instructing the appraisers to review each other's reports, confer with one another, and attempt to reach a consensus valuation did not contravene the statutory procedures set forth in section 17707.03. The statute provides in pertinent part:

> "The court shall appoint three disinterested appraisers to appraise the fair market value of the membership interests owned by the moving parties,

7

and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value.  The order shall prescribe the time and manner of producing evidence, if evidence is required.  The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties."  (§ 17707.03, subd. (c)(3).)

Nothing in the statutory language prohibits or restricts the trial court's authority to order the appraisers, if unable initially to reach a majority consensus on valuation, to confer further with each other to determine whether such a consensus can be achieved.  Similarly, nothing in the statutory language requires the trial court to make a de novo determination of value in the absence of a consensus valuation determined by a majority of the appraisers.

**B.** ***Case authority does not require the trial court to make a de novo determination of value***

Case authority interpreting and applying the buyout procedures of section 17707.03 is sparse.  Absent such authority, courts have looked to cases applying section 2000, which prescribes similar buyout procedures to avoid dissolution of a closely held corporation.[6]  (*Dickson, supra*, 164 Cal.App.4th at

---

[6]  Section 2000 provides that shareholders representing 50 percent or more of the voting power of a closely held corporation may avoid the dissolution of the corporation by purchasing at fair value the shares owned by those initiating the dissolution proceeding.  (§ 2000, subd. (a).)  The statute sets forth a procedure similar to that in section 17707.03 for the court to appoint three disinterested appraisers to ascertain fair value.  Section 2000 similarly provides that "[t]he award of the

8

pp. 474-475.) Cases decided under section 2000 do not support appellant's argument that the trial court was required to make a de novo determination of value.

The court in *Brown v. Allied Corrugated Box Co.* (1979) 91 Cal.App.3d 477 (*Brown*) expressly rejected appellant's position in the context of a shareholder buyout under section 2000: "We find absolutely no merit in plaintiffs' contention that a trial court faced with highly conflicting appraisal reports is obligated to make a de novo determination of value. Plaintiffs' authority for this proposition, *Venables v. Credential Ins. Agency, Inc.* [(1956)] 140 Cal.App.2d 724, says no such thing. Rather, the court in that case merely held that *if the trial court becomes convinced that an appraisal award is erroneous*, then it becomes the duty of the court to examine the matter de novo." (*Brown*, at p. 491.)

In accord with *Brown*, the section 2000 cases appellant cites conclude that a de novo determination of value is required only when the trial court finds the appraisers' award to be erroneous or incorrect. (*Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371, 1376 (*Cotton*) ["[I]f the court concludes that the appraisers' award is incorrect, rather than confirm the award, the court must examine the matter de novo and fix the correct value."]; *Brown, supra,* 91 Cal.App.3d at p. 489; *Venables v. Credential Ins. Agency, Inc., supra*, 140 Cal.App.2d at p. 727 (*Venables*).)[7] The trial court in this case did

appraisers or of a majority of them, when confirmed by the court, shall be final and conclusive upon all parties." (§ 2000, subd. (c).)

[7] *Brown* and *Venables* involved shareholder buyouts under former sections 4658 and 4659, predecessor statutes to section 2000. (See Legis. Com. com., Deering's Ann. Code Corp. Code, § 2000 (2009) pp. 432-433.)

9

not find any of the three appraisal valuations to be erroneous. A de novo determination of value accordingly was not required.

*Brown, supra*, 91 Cal.App.3d 477 also contradicts appellant's claim that the trial court lacked authority to order the appraisers, after submitting their initial reports, to meet and confer and attempt to reach a consensus valuation. In *Brown,* the trial court's order appointing the appraisers expressly stated that if the appraisers were unable to agree, "'they shall petition the court for instruction.'" (*Id.* at p. 491.)

## III. Allegedly erroneous determination of fair market value

### A. *Minority interest discount*

#### 1. *The valuation discount was not improper*

The appraisal award did not improperly discount the fair market value of the LLC interests. The stipulated order appellant entered into defines fair market value as that term is "commonly understood in the appraisal industry, California statutes, and precedents which have applied Corp. Code § 17707.03." A majority of the appraisers agreed that the fair market value standard requires consideration of discounts and that a 27 percent discount should be applied to the 25 percent LLC interests. Wichner and Thomson explained in their individual reports that a commonly accepted definition of fair market value is set forth in IRS Revenue Ruling 59-60 as "the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts." (Rev. Rul. 59-60, 1959-1 C.B. 237.) That same definition has been applied by courts in California. (See, e.g., *Rappaport v.*

10

*Gelfand* (2011) 197 Cal.App.4th 1213, 1228 [buyout of limited partnership interest]; see also *Metropolitan Water Dist. of So. California v. Campus Crusade for Christ, Inc.* (2007) 41 Cal.4th 954, 965 [eminent domain]; *In re Marriage of Hewitson* (1983) 142 Cal.App.3d 874, 882, fn. 7 [stock valuation in marriage dissolution]; *People v. Romanowski* (2017) 2 Cal.5th 903, 914-915 [value of property in theft offenses]; *Mola Development Corp. v. Orange County Assessment Appeals Bd.* (2000) 80 Cal.App.4th 309, 321-322 [valuation for real property tax assessment purposes].)

Wichner stated in her report that Revenue Ruling 59-60 requires discounts to be considered when valuing fractional interests. She explained that a lack of control discount "is applicable for minority interests, which are interests of less than 50% in a given asset or entity" and that "[m]inority, non-controlling interests in real estate holding companies have historically sold at a discount in comparison to their prorata share due primarily to lack of control and lack of marketability." Wichner further explained that another reason for discounting the minority LLC interests was the general unavailability of conventional financing for partial real estate interests.

Wichner based her discount analysis on sales of real estate limited partnership interests in the secondary market. Thomson based his discount analysis on valuation principles applied to specialized closed end funds holding real estate assets and valuation studies involving restricted stock transactions.

The 27 percent discount applied by a majority of the appraisers and confirmed by the trial court is consistent with commonly understood fair market valuation principles stipulated

to by the parties.  It is also supported by substantial evidence, consisting of Wichner's and Thomson's reports and analyses.[8]

We disregard appellant's argument that a ruling in a prior, wholly separate trust dispute between the parties has any relevance to the valuation analysis and the discount applied in this case.  The prior case did not concern the buyout of LLC membership interests under section 17707.03 or the valuation of those interests.  It accordingly has no relevance to the issues presented here.

> **2.** *The valuation standard prescribed under section 2000 does not apply*

Appellant contends the valuation standards prescribed for shareholder buyouts under section 2000 should apply to LLC membership purchases under section 17707.03.  Section 2000, which governs shareholder purchases initiated to avoid dissolution of a closely held corporation, "does not permit a lack of control discount when determining the fair value of a minority shareholder interest." (*Goles v. Sawhney* (2016) 5 Cal.App.5th 1014, 1019; see *Ronald v. 4-C's Electronic Packaging, Inc.* (1985) 168 Cal.App.3d 290, 298-299; *Brown, supra*, 91 Cal.App.3d at p. 486.)  Appellant claims such discounts should similarly be disallowed here.

Appellant's position contravenes ordinary principles of statutory construction.  When construing a statute, a court need only consider other statutes or case law applying other statutes if

---

[8]     One appellate court has suggested that a trial court's decision to apply a minority discount is within the scope of its discretionary authority. (*Maughan v. Correia* (2012) 210 Cal.App.4th 507, 523 ["the court's choice to apply a minority discount at all may involve an exercise of its discretion"].)

12

the plain language of the statute at issue is unclear.  (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519.) That is not the case here.  Section 17707.03 plainly states that members may avoid dissolution of a limited liability company by purchasing at "fair market value" the membership interests of those seeking dissolution.  The commonly accepted definition of "fair market value" under California law is the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties have reasonable knowledge of the relevant facts. (*Rappaport v. Gelfand, supra,* 197 Cal.App.4th at p. 1228; see *Metropolitan Water Dist. of So. California v. Campus Crusade for Christ, Inc., supra*, 41 Cal.4th at p. 965; *In re Marriage of Hewitson, supra,* 142 Cal.App.3d at p. 882, fn. 7; *People v. Romanowski, supra,* 2 Cal.5th at pp. 914-915; *Mola Development Corp. v. Orange Assessment Appeals Bd., supra*, 80 Cal.App.4th at pp. 321-322.)  Fair market value includes discounts reflected in the market.  (See Miller, *Discounts and Buyouts in Minority Investor LLC Valuation Disputes Involving Oppression or Divorce* (2011) 13 U.Pa. J. Bus. L. 607, 611 (hereafter Miller) ["'fair market value' would be the owner's proportionate interest in the corporation multiplied by the value of the corporation, plus or minus any premiums or discounts that would be reflected in the market"]; see also Moll, *Shareholder Oppression and "Fair Value": of Discounts, Dates, and Dastardly Deeds in the Close Corporation* (2004) 54 Duke L.J. 293 [discussing difference between "fair value" and "fair market value" in close corporation dissolutions].)

13

Section 2000, in contrast, specifies that shareholders seeking to avoid dissolution of closely held corporation must purchase at "fair value" the shares of those seeking dissolution." "Fair value" is defined in section 2000 as "the liquidation value as of the valuation date but taking into account the possibility, if any, of sale of the entire busines as a going concern in a liquidation." (§ 2000, subd. (a); accord, *Mart v. Severson, supra*, 95 Cal.App.4th at p. 526.)  Fair value "does not consider market-related factors that could affect value in the particular hands of a specific owner.  Instead, 'fair value' considers only 'the proportionate interest in a going concern.'" (Miller, *supra*, 13 U.Pa. J. Bus. L. at p. 611; see *Brown, supra*, 91 Cal.App.3d at p. 486; *Estate of Rowell* (1955) 132 Cal.App.2d 421, 429.)

The difference in the statutory language evidences a difference in legislative intent.  ""When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning."" (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 463, quoting *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 717.)  Had the Legislature intended to apply a "fair value" standard to purchases of membership interests under section 17707.03, it would have done so expressly in the statutory language.

"Fair value," as defined in section 2000, does not apply to purchases of limited liability membership interests under section 17707.03.

**B.** *Mismanagement allegations*

Appellant's operative TAC asserts no direct or derivative claims of mismanagement.  Appellant confirmed in the parties'

14

joint stipulation and order that she has "not alleged any direct or derivative claims for damages against any defendant in this case" and that "there are no grounds for any direct or derivative claims for damages asserted against any defendant in this matter."

The TAC alleges mismanagement and conflicts of interest solely as grounds for dissolution of the LLC. The dissolution action was stayed pursuant to section 17707.03 and the parties' stipulated order. (§ 17707.03, subd. (c).) There were accordingly no claims of mismanagement to be accounted for in the buyout valuation.

Appellant's counsel claimed during oral argument that appellant asserted mismanagement claims independent of the dissolution proceeding, in her cause of action in the TAC for failure to produce LLC records, and these claims should have been valued in the appraisal award. To the extent those claims were not stayed pursuant to section 17707.03, they were excluded from the appraisers' valuation by the parties' joint stipulation that no direct or derivative claims for damages were being asserted against respondents.

*Cotton, supra*, 170 Cal.App.4th 1371 and *Brown, supra*, 91 Cal.App.3d 477, on which appellant relies, are distinguishable. *Cotton* involved reversal of a valuation order under section 2000 because the valuation failed to consider a pending derivative action for breach of fiduciary duty. (*Cotton*, at p. 1380.) *Brown* similarly involved a valuation that failed to consider the impact of a pending wrongful death action against the corporation. (*Brown*, at pp. 482, 490-491.) Here, there were no pending actions for the appraisers or the trial court to consider.

*Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, which appellant also cites, is inapposite. The court in that case

15

simply held that an individual shareholder has standing to assert a direct cause of action for breach of fiduciary duty against the majority shareholders and is not limited to a derivative action. (*Id.* at pp. 1257-1260.) Appellant here has asserted no direct or derivative claims of mismanagement.

## DISPOSITION

The order confirming the majority appraisal award and setting a final buyout price of $621,954 for each 25 percent interest in the LLC is affirmed. Respondents are awarded their costs on appeal.

_____
CHAVEZ, J.

We concur:

_____
ASHMANN-GERST, Acting P. J.

_____
HOFFSTADT, J.

16

Filed 9/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BERNICE CHENG, | B303519 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC680509) |
| v. | |
| COASTAL L.B. ASSOCIATES, LLC, et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:*

The opinion in the above-entitled matter filed on September 1, 2021, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

_____

*ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.